744 A.2d 227 (2000)
Sang-Hoon KIM, Plaintiff/Appellant,
v.
FLAGSHIP CONDOMINIUM OWNERS ASSOCIATION Defendant/Respondent, and Flagship Hotel Management Corporation, j/s/a, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted September 29, 1999.
Decided January 31, 2000.
Callaghan, Thompson & Thompson, Atlantic City, for plaintiff/appellant (Edward M. Thompson, on the brief).
*228 Hueston, McNulty & Mueller, Florham Park, for defendant/respondent (Samuel J. McNulty, of counsel and on the brief).
Before Judges, BROCHIN, EICHEN and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
This appeal requires us to address the fiduciary relationship between a condominium association and an individual unit owner who is a member of the association. We conclude that when a condominium association allows a third party the virtually exclusive right to market and operate a hotel-type rental program, including access to its members and use of a common area of the premises, the Association has a fiduciary obligation to protect each member's right to participate in that program on fair and equal terms.
Plaintiff, Sang-Hoon Kim, appeals from a summary judgment dismissing his complaint against defendant Flagship Condominium Association, and from an order denying his cross-motion for summary judgment against the Association. Neither party alleges that any material facts are in dispute, and the issue before us is clearly a question of law. Because the Association failed to meet its fiduciary obligation to Kim, we reverse the summary judgment dismissing his complaint against the Association and remand for entry of partial summary judgment in favor of Kim and a determination of damages.
The relevant, undisputed facts as they appear in this record are as follows. Plaintiff is the owner of two units in a 440-unit high-rise condominium in Atlantic City, known as the Flagship Condominium. The master deed and by-laws empower the Association to administer the property for the benefit of the owners. The master deed and by-laws also permit unit owners the unrestricted right to rent out their units. Most, if not all the individual unit owners[1] participate in a rental program under contracts with co-defendant Flagship Hotel Management Corporation ("the Corporation" or "the management company"). The Corporation places advertisements, takes reservations, maintains the units (but not the common areas), and operates the front desk of the Flagship as if it were a hotel. The Corporation receives its management fees out of the rental revenue. The record reveals no written agreement between the Corporation and the Association. However, the record does establish (and the Association does not dispute) that the Corporation, as the manager and agent of the rental program, made use of a portion of the common area, including a front desk in the main lobby, for purposes of operating the hotel business.
For reasons not revealed in the record, plaintiff withdrew from the rental program in 1992 and sued the Corporation, apparently engaging it in costly litigation. As a result, the Corporation refused Kim's subsequent attempt to rejoin the rental program, and Kim then sought the Association's intervention with the management company on his behalf. The President of the Association's Board of Directors, Alberino Leone, testified in a deposition that he did not know "who hires the management company." Thomas Souther, director of operations for the management company, testified in a deposition that Bruce Kay, a member of the Association's Board of Directors, owns the management company. Souther's testimony appears to have been undisputed by any competent evidence offered on the cross-motions.
Leone further testified that he took plaintiff's request for action to the Board:
and they all agreed with me that the Condominium Association did not have *229 any control over the rental program. The rental program was between the management company, who manages the rental program and between the individual unit owners. It was a contract between them and the management company
Leone continued, "[W]e all agreed we had no jurisdiction.... We had no authority over the rental program.... So, we had to drop the issue [of Kim's request for help getting back into the rental program]." Although Leone knew that Bruce Kay was a member of the Association's Board as well as the owner of the management company, Leone did not know whether Kay participated in the Board's decision not to take action on Kim's behalf.[2] When the Association declined to act, Kim filed this suit against the Corporation and the Association.
Plaintiff's complaint against the Corporation and the Association alleged in the first count that by excluding him from the program, both defendants "discriminat[ed] against him, in violation of the United States Constitution, and the Constitution of the State of New Jersey, and such other laws as shall be shown through discovery." In the second count, plaintiff alleged that "the defendants ... discriminated against the plaintiff as a result of successful resolution of a prior lawsuit [and][s]aid discrimination is violative of the public policy of the State of New Jersey." Defendants obtained partial summary judgment dismissing the first two counts of plaintiff's complaint. Plaintiff has not appealed from that judgment. This appeal concerns only plaintiff's third count, charging the Association with violating its fiduciary duty "to protect the plaintiff's interest in this matter." The Law Division Judge granted the Corporation's motion for summary judgment on the ground that the Corporation was free to refuse to contract with any person.[3] That judgment does not affect the issue before us.
Kim claims that the Association owed him a fiduciary duty to intervene with the Corporation to enable him to enter the rental program. The Association maintains that it had no duty whatsoever to intervene on Kim's behalf. It maintains that neither its bylaws, nor its articles of incorporation, nor the Condominium Act, place any duty on the Association to act in an individual member's pecuniary interest. In addressing the cross-motions between plaintiff and the Association, the Law Division Judge framed the issue as follows:
But the central issue that I have to decide here right now is whether or not there is a duty on the condominium association to do that which Mr.Mr. Thompson contends. Certainly under certain circumstances there is a duty for a condominium association to act. That duty can be found in statute and that duty can be found in the condominium documents.
What I'm being asked to decide here today is that a condominium association has an obligation to see to the best interests, the best financial interests of its unit members. Now, most condominiums are not set up the way this one is, which is effectively to be run as a hotel and most as pointed out by Mr. McNulty are residential in nature.
But here the suggestion is that the condominium association has the obligation to usethese are my words, not Mr. Thompson's words, but to use kind of strong arm tactics against the Management Company to admit the plaintiff into its hotel room rental program. And the argument is that since there are other people who are in that program and want to be in that program and Dr. *230 Kim is the only person who wants to be in that program but isn't in that program, that the condominium association owes him the duty interceding on his behalf to the condominium association and in effect compelling the condominium association to a threat of withdrawing their management services to admit him into the program.
Finding no such duty, the judge granted summary judgment to defendants. He explained:
I frankly, have a great deal of difficulty with that whole set of propositions. There's a suggestion here that there is self dealing. There really is no evidence of self dealing. That's a theory that the plaintiff has and I can't imagine that the self dealing was worth much any way even if there is any self dealing which there's no proof of because I don't know how much these rooms are rented for. I don't know how much, how many more times a given room would come up on rotation, that Dr. Kim's rooms are out it, thanthan it would if his rooms were in the mix.
But I agree with the defendant's position in this case, that there is no articulated duty either in the statutes or in the condominium documents or in the case law which would require a condominium association to take the steps that the plaintiff is suggesting in this case, and that is to intercede on his behalf, not on behalf of all the members of the condominium association or even the majority the members. But on his behalf so that his units can make money through this room rental program.
I just don't think that a condominium association has a duty that specific to a particular member of the condominium association and II just don't see the duty, and so I grant the motion for summary judgment by the defendant and I deny the plaintiff's motion for summary judgment. And I'll be interested to see what the Appellate Division has with this.
We reverse.
The Condominium Act, N.J.S.A. 46:8B-1 to -38, sets forth the duties and responsibilities of a condominium association. N.J.S.A. 46:8B-14, -15. The governing documents are the master deed, see N.J.S.A. 46:8B-8, -9, and the by-laws, see N.J.S.A. 46:8B-13. See also N.J.S.A. 46:8B-3. As plaintiff's attorney argued in his certification in opposition to defendant's motion for summary judgment,[4] the master deed includes a provision that the Association is "formed to administer, manage, and operate the common affairs of the Unit Owners of the Condominium." Moreover, the Articles of Incorporation provide at Article II that the Association is "to provide for the maintenance, preservation and control of the common elements...." Similarly, Article V of the Association's bylaws empowers the Board to "cause the common elements to be maintained according to ... the master deed."
The Association's Board of Directors has a fiduciary obligation to its members similar to that of a corporate board to its shareholders. See Thanasoulis v. Winston Towers 200 Ass'n, 110 N.J. 650, 657, 542 A.2d 900 (1988); Siller v. Hartz Mountain Assoc., 93 N.J. 370, 382, 461 A.2d 568, cert. denied, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983). That obligation includes the duty to preserve and protect the common elements and areas for the benefit of all its members. See, e.g., Thanasoulis, supra, 110 N.J. at 656-57, 542 A.2d 900; Chin v. Coventry Square Condominium Ass'n, 270 N.J.Super. 323, 327, 637 A.2d 197 (App.Div.1994). In its answer to plaintiff's complaint, the Association admits it owes a fiduciary duty to its members. The issue is, of course, the extent of that duty and its application to *231 the unique facts of this case. The "common element" here is not merely the physical space in the lobby or office, but the common (if intangible) benefit derived from pooling the units to permit a hotel-type operation.
The Association President, Leone, testified at his deposition that he did not know who granted authority to the management company to use the front office to rent out the units and operate the building as a hotel, and that the Association, "to the best of [his] knowledge," did not. We must assume that the Corporation operated the hotel business with the Association's tacit approval and implied permission, if not an express agreement. If that were not so, the Association would have violated its fiduciary duty to protect its members against the unauthorized use of common property. The record does not inform us just how the management company gained access to the individual unit owners, including their names and addresses, in order to solicit their participation in the rental program. Nevertheless, we can reasonably infer that the Association assisted in providing that information and authorized the Corporation's operation of the rental program. The arrangement was apparently "at will," with no fixed term.
When a condominium association allows a third party the use or benefit of any common element, such as the lobby or front office, or provides access to or information about its members[5] to a third party, it must take reasonable steps to ensure that it does not give away valuable rights and information without gaining some consideration or benefit for all of its members in return. Here the benefit to the management company is the unique and apparently exclusive opportunity to represent all interested unit owners by operating the hotel rental program on the premises and earning fees thereon. The benefit to the members is the opportunity to participate in the hotel rental program and to earn income through shared marketing and management by the Corporation. The Association's fiduciary obligation to its members requires it to ensure the Corporation's reasonable conduct of the program, including equal availability of its rental services, and an even-handed application of its operating rules, to all the Association's members. See, e.g., Griffith v. Rittenhouse Park Community Ass'n, 215 N.J.Super. 444, 449, 521 A.2d 1372 (Ch.Div.1986).
The record reveals that the Corporation had previously been involved in litigation with Kim, which apparently was costly for the Corporation and resulted in an award in Kim's favor. As a result, the Corporation refused to resume doing business with Kim. The record does not reveal the nature of the dispute underlying that litigation or suggest any other basis for the Corporation's refusal to do business with Kim. As the entity with a fiduciary obligation to all of the members, the Board had the obligation to seek that information in order to determine whether the Corporation's refusal to deal with Kim was proper. The Board could not simply defer to the Corporation's decision to exclude Kim. The Board's failure in that regard establishes a violation of its duty to Kim. And the absence of a record of the nature of Kim's dispute with the Corporation inures to the Association's detriment on this appeal.
In support of its motion for summary judgment (and in opposition to Kim's summary judgment motion), the Association relied solely on the argument that it owed no duty to Kim. The Association never argued that even if such a duty existed, investigation would have revealed adequate grounds for the Corporation to exclude Kim from the program. If the Association had such evidence, it should have offered it in defense of Kim's cross-motion.[6]
*232 No such evidence was proffered in the Law Division, and no party suggested that further discovery was needed to fairly resolve the cross-motions. Thus we can and must assume that Kim's prior lawsuit was the Corporation's only reason for excluding him.
The fact that plaintiff sued the management company and won does not justify the company's refusal to reenroll him in the rental program. Nor does plaintiff's right to list his unit with another brokerage company mitigate the harm. We can assume that without the economy of scale, no broker or rental agent is likely to advertise, or maintain an 800 number to rent a single unit for a short-term stay, and persons seeking a short-term stay at a "hotel" are not likely to approach a real estate broker's office. Thus plaintiff's exclusion from the rental program was virtually certain to deprive him of a significant common benefit of unit ownership available to all other members of in the Association. Procedural fairness required the Association's Board to genuinely consider plaintiff's grievance, and after such consideration, to act appropriately in accordance with its fiduciary obligation. Plaintiff's past successful suit against the management company cannot work a virtual forfeiture of his property as an income producing asset.
If the Corporation refused to do business with Kim on the basis of Corporation's private grievance, as this record requires us to assume, and not on the basis of Kim's violation of any reasonable rules of the rental program, the Association had a fiduciary obligation to protect Kim by conditioning the Corporation's continued access to the property upon its acceptance of Kim on the same terms as all other unit owners. The Association has breached that duty by declining even to look into the matter. Just as a condominium association may not unfairly discriminate among its members, Thanasoulis v. Winston Tower 200 Ass'n, Inc., 214 N.J.Super. 408, 420, 519 A.2d 911 (App.Div.1986) (J. Cohen, dissenting), rev'd, 110 N.J. 650, 542 A.2d 900 (1988), it may not look away when a management company operating on its premises is alleged to have done so. A good faith review of Kim's request for help was essential to fulfilling the Board's obligation to Kim. That never happened.
We turn next to another issue raised by this appeal. The motion judge did not address a separate alleged violation of the Association's fiduciary duty: whether the Association permitted the principal of the Corporation, who served on the Association's Board of Directors, to participate in decisions regarding business dealings between the Corporation and the Association. The role of Bruce Kay in the Board's decision to reject Kim's request to intervene, and in the Board's dealings with the Corporation, should have been explored in the Law Division. We do not suggest that Kay's position as a member of the Board, and the Board's grant of authority to Kay's management company, are inherently improper. See N.J.S.A. 14A:6-8 (governing corporate transactions with one or more of the corporation's directors). Such a transaction is neither void nor voidable on account of the relationship if the "contract or other transaction is fair and reasonable," or if there has been disclosure of the common interest and subsequent ratification by the Board or the shareholders. See generally, Pachman, CORPORATIONS, Comment 9 to ch. 6 (1999).
However, permitting Kay to participate in the resolution of an Association member's complaint about his own company's conduct of the hotel rental program would be an inherent conflict.
A condominium association stands in a fiduciary relationship to the unit owners. *233 That relationship requires that it act consistently with the Condominium Act and its own governing documents and that its actions be free of fraud, self-dealing, or unconscionability. Moreover, that fiduciary relationship requires that in dealing with unit owners, the association must act reasonably and in good faith. If a contested act of the association meets each of these tests the judiciary will not interfere.
[Billig v. Buckingham Towers Condo. Ass'n I, Inc., 287 N.J.Super. 551, 563, 671 A.2d 623 (App.Div.1996) (citations omitted) ].
The record does not show that the Association retained the right to terminate its relationship with the Corporation. If it did, it would be responsible for its failure to invoke that right to ensure that the Corporation would treat Kim fairly. And if the Association did not retain the right to terminate, it is responsible for having surrendered a right which would have enabled it to fulfill its fiduciary obligation. Either way, Kim is entitled to partial summary judgment on liability.
Summary judgment in favor of the Association on count three is reversed. We remand this matter (1) for entry of partial summary judgment in favor of Kim with respect to the Association's violation of its fiduciary duty and (2) for a determination of damages. The measure of damages should be Kim's fair share, under the rental program formula covering the period during which he was improperly excluded, beginning with the date he requested Board action. One formula for calculating Kim's damages would be the ratio that his rental income while enrolled in the rental program bears to the total rental income received by all participating owners during that period. The same ratio then could be applied to the total rental income received by all participating owners in the period when Kim was denied participation (and after Kim requested Board action).
We reverse and remand to the Law Division for entry of partial summary judgment in plaintiff's favor and for further proceedings consistent with this opinion.
NOTES
[1] We are told that the developer still owns a majority of the units, and markets them through a time-share program administered separately from the rental program involved in this appeal.
[2] The minutes of that Board meeting are not in the record.
[3] The summary judgment in favor of the Corporation was an interlocutory order, and plaintiff did not seek leave to appeal. Nor did plaintiff include that judgment in its notice of appeal. Time to appeal with respect to the judgment in favor of the Corporation has long since expired.
[4] The motion judge properly criticized the practice of including argument in the form of a certification.
[5] We need not address potential privacy concerns that are not raised in this case.
[6] The availability of whatever information existed is suggested by the unity of interest which the dual legal representation of the Corporation and the Association in this lawsuit implies. Since both defendants have maintained that no contract exists between them, no contractual indemnification explains the dual representation.