747 A.2d 299 (2000)
329 N.J. Super. 197
Mark ROGERS and Jill Rogers, Plaintiffs-Appellants,
v.
John BREE and Deborah Dohertybree, Defendants/Third-Party Plaintiffs, and
Coldwell Banker/Schlott Realtors, Defendant-Respondent, and
American National Fire Insurance Company, Manhardt-Dileo Insurance Agency, Inc. and Chase Manhattan Mortgage Corporation, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2000.
Decided March 17, 2000.
*300 Robert A. Scirocco, Budd Lake, for plaintiffs-appellants (Scott E. Levens, on the brief).
John C. Simons, New Brunswick, for defendant-respondent (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Simons, of counsel and on the brief).
Before Judges STERN, KESTIN[1] and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiffs Mark Rogers and Jill Rogers appeal an order granting summary judgment in favor of defendant Coldwell Banker/Schlott Realtors (Coldwell Banker), dismissing their complaint.[2]
Effective November 1, 1994, plaintiffs leased a townhouse from John and Deborah Bree (the Brees). According to Mark Rogers, on February 24, 1996, he went to the basement to check his laundry and saw water on the floor in a "four or five-foot radius around the washing machine". He determined that the water was coming from the back of the washing machine. Therefore, he placed his hand on the back of the washing machine while attempting *301 to pull it from the wall in order to disengage the plug from the socket. According to Rogers, the back panel of the machine had previously been removed, and when he attempted to move the washing machine, he came in contact with wires, and was electrocuted, causing some of his fingers to be severed. The washing machine was in the townhouse at the time the Rogerses first entered the premises.
The lease was prepared on a form provided by defendant Coldwell Banker. Under the terms of the lease, it received a $1,200 commission. In addition, Ralph Hatcher, an associate of defendant, acted as a property manager during the tenancy. He had marketed the premises for the Brees, and was responsible for obtaining the lease. Pursuant to an oral agreement with the Brees, Hatcher also received a monthly fee of $65 to manage the property. According to Hatcher, his duties were collecting rent, paying maintenance fees, and acting as the contact agent for the Brees if repairs were needed.
In his deposition, Mark Rogers conceded that there had been no discussion with Hatcher regarding the condition of the washer and dryer. In addition, at her deposition, Jill Rogers conceded that she expressed no concerns regarding the condition of the appliances when she viewed the premises with her husband and Hatcher prior to entering into the lease. The record does not reflect any complaints made thereafter.
In her certification, filed in opposition to defendant's motion for summary judgment, Jill Rogers stated that Hatcher advised her that he was the property manager and that he was "responsible for the unit". She further certified that Hatcher stated that they were not to contact the Brees. Finally, she certified that Hatcher said the current tenants were vacating the premises and he would perform his inspection before they moved in. According to Hatcher, when the previous tenants vacated, he conducted a "walk through" of the premises to determine the "[c]ondition of carpets, condition of paint, cleanliness".
Plaintiffs' complaint contained no specific allegations of negligence, and generally alleged that "defendants negligently maintained the premises" and "breached an implied warranty of habitability".
After engaging in discovery, Coldwell Banker moved for summary judgment contending that it had breached no duty owed to plaintiffs. Plaintiffs opposed the motion contending that Hatcher had a duty to inspect the premises for latent defects. The motion judge agreed with Coldwell Banker and determined that Hatcher, who merely collected the rents and was the contact person for repairs, had no duty to inspect for latent defects. Plaintiffs appeal, contending that the motion judge erred in concluding that Coldwell Banker, acting through Hatcher, owed no duty to them. We affirm.
We must preliminarily determine whether, under the circumstances presented, Coldwell Banker owed a duty to the Rogerses, and if it did, the extent of that duty. The question of whether a duty exists is a matter of law to be decided by the court. Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996); Zielinski v. Professional Appraisal Associates, 326 N.J.Super. 219, 226, 740 A.2d 1131 (App.Div.1999); S.P. v. Collier High School, 319 N.J.Super. 452, 467, 725 A.2d 1142 (App.Div.1999). Moreover, determination of the existence of a duty ultimately is a question of fairness and policy. Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 292, 676 A.2d 1036 (1996); Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991).
In determining whether a duty exists, the court must identify, weigh and balance the following factors: the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public interest in the proposed solution. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). The "analysis is both fact-specific and principled; it must lead to solutions that properly and fairly resolve *302 the specific case and generate intelligible and sensible rules to govern future conduct". Ibid.
Our research has failed to uncover a case with facts similar to this case. Nor has counsel furnished any similar case. Given the limited scope of Coldwell Bankers' undertaking, we fail to see how the public interest would be furthered by imposing a duty upon it to search every nook and cranny of the rental premises to discover latent defects. Specifically, we decline to impose upon Coldwell Banker, as a realtor which merely agreed to accept the rent on behalf of the owner, pay maintenance fees, and be the contact person for repairs, the duty to inspect appliances, and pull them away from the wall to determine if they were operable, or if they contained hidden dangers.
We recognize that in Hopkins, our Supreme Court imposed upon a real estate broker, conducting an open house, a duty to ensure, through a reasonable inspection and warning, the safety of prospective buyers and visitors who tour an open house. Hopkins v. Fox & Lazo Realtors, supra, 132 N.J. at 448, 625 A.2d 1110. The Court concluded that "[t]he duty to conduct a reasonable inspection in the home arises when in connection with an open-house tour such an inspection is a part of the professional services that would be undertaken by a reasonable broker in attempting to sell the house on behalf of its owner and when the broker has had an adequate opportunity to have undertaken that inspection". The Court was influenced by the fact that in many cases the potential buyer might reasonably expect the broker to be familiar with the premises and would, therefore, rely on the broker's presumed familiarity with the house, including a knowledge of all of its important features and characteristics. Id. at 444, 625 A.2d 1110. The Court was also influenced by the fact that the broker receives tangible economic benefits from the relationship with potential buyers who visit the home during the open house. It provides the broker with the opportunity to sell the home and earn a commission. An open house also presents a broker with an opportunity to meet and cultivate future clients. In addition, the broker may discuss other listings with visitors and thus promote his or her individual interests. Id. at 440-41, 625 A.2d 1110. Accordingly, the Court ultimately concluded that there was nothing unfair or unjust in imposing a limited duty to inspect upon a realtor conducting an open house.
Significantly, however, the Court limited the duty by concluding that it did not require the broker to warn against any dangers that are not known to the broker or would not be revealed during the course of a reasonable broker's inspection. Id. at 445, 625 A.2d 1110. A broker is only required to discover or warn of dangerous conditions that might reasonably be discovered while examining a residence in preparation of an open house. Ibid. Conversely, the broker is not responsible for latent defects that are hidden and of which the broker has no actual knowledge. Id. at 448-49, 625 A.2d 1110.
We decline to extend Hopkins to the facts of this case. We reject plaintiffs' contention that Coldwell Banker assumed the role of property manager. After all, Coldwell Banker did not undertake to be responsible for necessary repairs. It did not assume, by contract, the responsibility of inspecting the property periodically on behalf of the owners to discover latent defects. The Rogerses do not assert that they relied upon Coldwell Banker to inspect the townhouse for latent defects or, if they did, that such reliance was reasonable. We decline to impose a duty upon Coldwell Banker, in light of its limited undertaking for a nominal fee, to inspect the rental property for latent defects. There is nothing unfair or unjust in declining to impose a duty under these circumstances.
In conclusion, we note our observation that prospective tenants have the ability to protect themselves if they desire to assure themselves, prior to entering into the lease, that the premises are safe, and there are no hidden dangers. There are *303 home inspection services available to prospective tenants or purchasers. Home inspectors are more qualified than realtors to identify and locate defects in the property, and are more familiar with the potential dangers associated with the defects, and the cost of remedying them. If a prospective purchaser or tenant engages a home inspection service, and the home inspection service negligently performs its duties, it would be fair and just to impose liability upon it. Under these circumstances, we conclude that it would be unfair to impose liability upon Coldwell Banker, and no public interest or public policy would be furthered by the imposition of such a duty.
Affirmed.
NOTES
[1] Judge Kestin did not participate in oral argument. However, the parties consented at oral argument to his participation in the decision.
[2] Although other defendants were named in the complaint, or impleaded, all other claims have been resolved by way of summary judgment or settlement. None of those claims are involved in this appeal.