887 A.2d 689 (2005)
382 N.J. Super. 1
Sandra SIDDONS, Plaintiff-Appellant,
v.
David COOK, Wendy Cook, and Country Place Condominium Association, Defendants-Respondents. and
Westport Insurance Company, Defendant and
David Cook and Wendy Cook, Third Party Plaintiffs
v.
Leonard V. Siedlarz, Third Party Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 2005.
Decided December 16, 2005.
*690 Keith T. Smith, attorney for appellant.
*691 Debra Hart, attorney for respondents David and Wendy Cook (Cindy B. Shera, on the brief).
Wilbraham, Lawler & Buba, attorneys for respondent, Country Place Condominium Association (Edward J. Stolarski, Jr., Philadelphia, PA, on the brief).
Before Judges CONLEY, WINKELSTEIN and SABATINO.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiff Sandra Siddons owns a unit in the Country Place Condominium that was flooded by water from a broken dishwasher hose in the unit owned by the Cook defendants. The Country Place Condominium Association (the Condominium Association) was aware that similar hoses had previously broken in other condominium units. Plaintiff sued the Cooks and the Condominium Association for damages. The Law Division dismissed her complaint on summary judgment. The judge found the Cooks were neither strictly liable nor negligent, and that the Condominium Association owed no duty to warn plaintiff about the potential flooding hazard.
We agree with the motion judge that the Cooks were neither strictly liable nor liable in negligence for the damages to plaintiff's unit. We disagree, however, with the judge's conclusion that the Condominium Association had no duty to warn plaintiff of the potential flooding hazard given its knowledge of the potential problem. Consequently, we affirm the dismissal of the complaint as to the Cooks and reverse the dismissal as to the Condominium Association.
The material facts are not in dispute. Plaintiff owned a condominium unit located directly below the Cooks' unit. On October 14, 2002, plaintiff discovered that her unit was being flooded from the unit above. The source of the water was determined to be a worn or broken dishwasher hose in the Cooks' unit. Plaintiff claims property damages in excess of $25,000.
Wendy Cook purchased her unit from the developer in 1982 with the dishwasher already installed. After she and David Cook married in 1992, they moved from the unit, leasing it to various tenants through the date the dishwasher hose broke. While they lived in the unit, the Cooks never experienced problems with the dishwasher. David Cook testified that he occasionally inspected hoses located under the sink for "cracks, dry rot, [and] bubbles." The damaged portion of the dishwasher hose, however, was located under the dishwasher and was not accessible.
The Cooks' tenant at the time of the incident was Leonard Siedlarz.[1] When deposed, Siedlarz testified that when he first moved into the unit, the dishwasher was not draining properly. He reported the problem to the Cooks who had it repaired the following day. There was no evidence of a leak at that time.
On the day of the incident, the dishwasher was not in use nor had it been used for several months. After being notified of the leak by plaintiff, Siedlarz saw water on his kitchen floor coming from underneath the sink. A plumber determined that the leak was coming from a plastic hose. The plumber certified that the visible portion of the feed line (the hose) was in good condition; it was the portion that *692 was not visible without pulling out the dishwasher that had split.
Three units in the condominium development experienced similar problems with their dishwasher hoses prior to the incident at issue here. Each affected unit owner or occupier had notified the administrator of the Condominium Association as to what had occurred. The administrator responded that the broken hoses were not the Condominium Association's responsibility.
Given this background, we first address plaintiff's claim that the Condominium Association had a duty to warn the unit owners of the potential problem with the dishwasher hoses. The trial judge concluded that the Condominium Association had no such duty. We respectfully disagree.
A condominium association is composed of unit owners. N.J.S.A. 46:8B-9, -12, -12.1. It is responsible for the administration and management of the condominium. N.J.S.A. 46:8B-8, -12. Its operations are informed by the Condominium Act, N.J.S.A. 46:8B-1 to -38 (the Act), as well as the contents of the master deed and the condominium by-laws. N.J.S.A. 46:8B-13, -14, -15. Among the powers afforded to a condominium association is the right to "have access to each unit from time to time ... as may be necessary for the maintenance, repair or replacement of any common elements therein or accessible therefrom or for making emergency repairs necessary to prevent damage to common elements or to any other unit or units." N.J.S.A. 46:8B-15(b). A unit owner nevertheless remains liable "for injuries or damages resulting from an accident in his own unit in the same manner and to the same extent as the owner of any other real estate." N.J.S.A. 46:8B-16(c).
The governing body of a condominium association has a fiduciary obligation to the unit owners "similar to that of a corporate board to its shareholders." Kim v. Flagship Condo. Owners Ass'n, 327 N.J.Super. 544, 550, 744 A.2d 227 (App. Div.), certif. denied, 164 N.J. 190, 752 A.2d 1292 (2000); see also Thanasoulis v. Winston Towers 200 Ass'n, Inc., 110 N.J. 650, 657, 542 A.2d 900 (1988); Siller v. Hartz Mountain Assocs., 93 N.J. 370, 382, 461 A.2d 568 (1983), cert. denied, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983). A condominium association's governing body has "the duty to preserve and protect the common elements and areas for the benefit of all its members." Kim, supra, 327 N.J.Super. at 550, 744 A.2d 227. Condominium association board members are required to "act reasonably and in good faith in carrying out their duties." Papalexiou v. Tower West Condo., 167 N.J.Super. 516, 527, 401 A.2d 280 (Ch.Div.1979).
The Country Place by-laws designate responsibility for the maintenance and repair of common elements to the Condominium Association, and the maintenance and repair of personal property located within the individual units to the unit owners. It is conceded that the dishwasher hose in question is not a common element, and therefore the by-laws place the responsibility for their inspection and maintenance on the unit owners. That said, the relevant consideration here is whether the Condominium Association had a duty to warn the unit owners of the potential defect in the dishwasher hoses after it was put on notice of the defect.
Whether a duty exists is a matter of law, to be decided by the court, not the factfinder. Rogers v. Bree, 329 N.J.Super. 197, 201, 747 A.2d 299 (App. Div.2000). To determine the existence of a duty, a court considers fairness and public policy. Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 292, 676 A.2d 1036 (1996). Foreseeability of injury to *693 others from a defendant's conduct is important, but not dispositive. Ibid. Whether a duty is owed turns on whether the imposition of the duty "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). Such an inquiry involves "identifying, weighing, and balancing several factors  the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid.
Duty is not a rigid concept; it adjusts "to the changing social relations" of society. Wytupeck v. City of Camden, 25 N.J. 450, 462, 136 A.2d 887 (1957). To determine if a duty exists, we examine the totality of the circumstances. J.S. v. R.T.H., 155 N.J. 330, 339, 714 A.2d 924 (1998). "When the defendant's actions are `relatively easily corrected' and the harm sought to be prevented is `serious,' it is fair to impose a duty." Id. at 339-40, 714 A.2d 924 (quoting Kelly v. Gwinnell, 96 N.J. 538, 549-50, 476 A.2d 1219 (1984)).
Because the issue here is one of first impression, we look first to cases that imposed a duty to warn in similar, but not identical, contexts. In so doing, cases discussing the common-law obligations of a landowner to persons injured on the landowner's premises provide some guidance.
For example, in Monaco v. Hartz Mountain Corp., 178 N.J. 401, 840 A.2d 822 (2004), a traffic sign owned and installed on the defendant's property by the City of Newark became dislodged by a gust of wind and injured the plaintiff. Id. at 404-05, 840 A.2d 822. The Monaco Court concluded that even though the property owner did not own or install the stop sign, it had a duty to make reasonable inspections of its own property and the abutting sidewalk and take such steps as were necessary to correct or give warning of a hazardous condition located on the property. Id. at 418, 840 A.2d 822. Significantly, the Court noted that "a landlord may not sit idly by a hazardous condition affecting its property, regardless of control, when that condition places a third party in danger." Id. at 416, 840 A.2d 822 (our emphasis); see also Endre v. Arnold, 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div. 1997) (same); cf. Tighe v. Peterson, 356 N.J.Super. 322, 325-26, 812 A.2d 423 (App. Div.) (social host has no duty to warn guest who has actual knowledge of dangerous condition that exists on property; duty limited to warning of condition of which guest is unaware), aff'd, 175 N.J. 240, 814 A.2d 1066 (2002); and compare Snyder v. I. Jay Realty Co., 30 N.J. 303, 316-17, 153 A.2d 1 (1959) (where dangerous condition exists that is known to a tenant, and the condition was not readily observable, tenant must either give warning or make condition reasonably safe).
That duty to warn, which in some instances is independent of a duty to inspect, repair or maintain, has been imposed in a variety of non-landowner contexts. See Derr v. Kawasaki Kisen K.K., 835 F.2d 490, 493, 496 (3d Cir.1987) (ship owner without duty to supervise or inspect cargo loaded pursuant to Longshore and Harbor Workers' Compensation Act § 5b, 33 U.S.C.A. § 905(b), had duty to warn of improper stowage if ship owner had actual knowledge and danger not open and obvious), cert. denied, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988); Zavala-Pizano v. Indus. Handling Equip. Co., 847 F.Supp. 621, 622 (D.Ct.Ill.1994) (seller of used goods without duty to inspect had duty to warn of dangerous condition of which it was aware and was not known and obvious to user of product); Adams v. N. Ill. Gas Co., 333 Ill.App.3d 215, 266 Ill. *694 Dec. 411, 774 N.E.2d 850, 857 (2002) (gas company without duty to inspect device connected to gas line by third party, which caused gas explosion, nevertheless obligated to warn of potential hazards of connection of which it was aware), aff'd, 211 Ill.2d 32, 284 Ill.Dec. 302, 809 N.E.2d 1248 (2004); Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 574, 577-78, 675 A.2d 209 (1996) (engineer with no contractual obligation to supervise safety procedures at construction site, who had opportunity and was in position to foresee and discover a risk of harm, had duty to exercise reasonable care to avoid risk of injury); Seeley v. Cincinnati Shaper Co., Ltd., 256 N.J.Super. 1, 14, 18, 606 A.2d 378 (App.Div.) (under Products Liability Act, N.J.S.A. 2A:58C-1 to -4, manufacturer with actual or constructive knowledge of danger has duty to warn even without obligation to correct defect), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992).
We glean from the case law that under some circumstances the knowledge of a dangerous condition, regardless of control over that condition, may impose upon a person a duty to warn third parties of the danger. Those circumstances exist here. The Condominium Association had no duty to either inspect or maintain the personal property located in the Cooks' condominium unit. Nonetheless, because it knew of the potentially dangerous condition, and that condition was not open and obvious to the unit owners, it had a duty to act reasonably to warn the unit owners of the potential danger. That duty is borne out using the Hopkins analysis. See, supra, 132 N.J. at 439, 625 A.2d 1110.
First we examine the relationship of the parties. As noted, a condominium association has a fiduciary obligation to its unit owners. Thanasoulis, supra, 110 N.J. at 657, 542 A.2d 900. Indeed, it is composed of unit owners, and its very existence is for the benefit of the unit owners. See Fox v. Kings Grant Maint. Ass'n Inc., 167 N.J. 208, 220, 770 A.2d 707 (2001); N.J.S.A. 46:8B-12.
The Act gives a condominium association the power to protect the property of the unit owners. It gives condominium associations "access to each unit" as may be necessary "for making emergency repairs necessary to prevent damage to ... any other unit or units." N.J.S.A. 46:8B-15(b). Correspondingly, the Condominium Association by-laws afford those same rights. They require a unit owner to provide the Condominium Association with access to his or her unit to correct "any condition originating in his Apartment Unit [that threatens] any Apartment Unit or Common Element."
These factors emphasize the close relationship between a condominium association and its unit owners, which weighs in favor of finding that the Condominium Association had a duty to warn the unit owners of the potential for flooding under the circumstances as presented.
Next, we consider the nature of the risk and the Condominium Association's ability to exercise care. Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110. The Condominium Association, prior to the incident that damaged plaintiff's unit here, had been notified on at least three occasions that the dishwasher hoses that had been installed by the original developer caused flooding to other condominium units. That risk was not known to the majority of the unit owners, only to the Condominium Association, which was in the best position to notify the unit owners of the potentially dangerous condition. It would not have been unduly burdensome for it to do so through its newsletter or some other reasonable means.
*695 Finally, we examine the interests to be served by the proposed solution. Ibid. To be sure, a flood in a condominium unit could damage not only other units, but also the common elements. The interests of the unit owners in their personal property, and the interests of the unit owners as a whole in the common elements, would be safeguarded by requiring the warning.
As we noted earlier, when a defendant's conduct may be corrected relatively easily, and the harm sought to be prevented is serious, it is fair to impose a duty. J.S., supra, 155 N.J. at 339-40, 714 A.2d 924. That is the case here. It may have been relatively easy for the Condominium Association to give a warning to the unit owners, and that warning may have prevented serious harm. The imposition of this limited duty upon the Condominium Association to warn of known defects in personal property located in the individual units that could damage other units or the common elements is not inimical to the purpose of the Act or the Condominium Association by-laws. Imposing a duty under these circumstances is, as Justice Clifford explained in his concurring opinion in Hopkins, supra, "`no big deal,' in the sense of a cataclysmic change in the law." 132 N.J. at 451, 625 A.2d 1110. Accordingly, we conclude that the Condominium Association had a duty to warn the unit owners of the potential problems caused by the dishwasher hoses. Whether it breached that duty to warn, and, if so, the breach was a proximate cause of plaintiff's injuries, remain questions for the jury.[2]
We next address plaintiff's claims against the Cooks. Plaintiff has raised several issues. One is that the by-laws of the Condominium Association impose liability on the unit owners to other unit owners. We decline to address this issue because plaintiff failed to raise it in the Law Division. See Nieder, supra, 62 N.J. at 234, 300 A.2d 142.
Next, plaintiff claims the Cooks were strictly liable for the water damage caused to plaintiff's unit. The motion judge rejected that claim.
In landowner liability cases, strict liability is only applicable where injuries were caused by abnormally dangerous conduct or intentional conduct. See Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 488, 468 A.2d 150 (1983); Burke v. Briggs, 239 N.J.Super. 269, 273, 571 A.2d 296 (App.Div.1990) (where the plaintiff's garage was damaged by one of the defendant's trees, the court reasoned that liability without fault should not be imposed, whether the subject activity was classified as a nuisance or a trespass, absent intentional or hazardous activity requiring a higher standard of care or, as a result of some compelling policy reason); Restatement (Second) of Torts, § 166 "Non-liability for Accidental Intrusions" ("Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent entry on land in the possession of another ... does not subject the actor to liability ... even though the entry causes harm...."). Here, the dishwasher hose wore out. No intentional or hazardous activity led to the flood. No public policy demands that the Cooks be held responsible. Plaintiff points out that the Cooks had complete control over their plumbing and were in the best position to avoid such an accident. That may be true, and it may be a consideration in determining whether the Cooks were *696 negligent; but, it does not give rise to a strict liability cause of action.
The judge also rejected plaintiff's negligence claim against the Cooks. A negligence cause of action requires proof that a defendant owed a duty of care, the defendant breached that duty, and injury was proximately caused by the breach. Gilleski v. Comty. Med. Ctr., 336 N.J.Super. 646, 652, 765 A.2d 1103 (App.Div. 2001). Here, neither party disputes that the Cooks owed a duty to plaintiff to act reasonably to inspect and maintain their dishwasher. The issue on summary judgment was therefore whether material facts were in dispute from which a jury could infer that the Cooks breached that duty of care. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The motion judge concluded that no such facts existed, and so do we.
The Cooks did not experience a problem with the dishwasher during their occupancy of the unit. David Cook testified that before leasing the property to various tenants, he would inspect the toilets, faucets, washer hoses, garbage disposal and hoses underneath the sink and water heater.
The dishwasher was not in use at the time of the plumbing malfunction. The tenant occupying the unit at the time of the incident never experienced a leak underneath the sink prior to the incident. He had no problems with the dishwasher following the repair made shortly after he moved in when the dishwasher was not draining properly.
The plumber certified that the portion of the plastic feed line that split was not visible because it was located underneath the dishwasher; he also certified that the portion of the hose that was visible was undamaged.
We agree with the motion judge that under these facts, no jury could reasonably conclude that the Cooks were negligent for failure to inspect and/or maintain the dishwasher. Simply because the hose was old did not require the Cooks to remove the dishwasher to inspect the hose underneath it.
In sum, we reverse the court's order dismissing plaintiff's complaint against the Condominium Association and remand for further proceedings consistent with this opinion. We affirm the dismissal of the complaint against the Cooks.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] The Cooks voluntarily dismissed their complaint against him and his liability is not an issue on appeal.
[2] Whether the Condominium Association did in fact give sufficient warning to the unit owners, as it contends, was not reached in the Law Division and we do not address it. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).