**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4426-16T3

JOSEPH S. D'ELIA,

    Plaintiff-Respondent,

v.

JOYCE CAMPISI and LIBERTY
MUTUAL MID-ATLANTIC INSURANCE
COMPANY,

    Defendants-Appellants.

_____

Submitted March 7, 2018 — Decided August 1, 2018

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey,
Law Division, Special Civil Part, Morris
County, Docket No. SC-316-17.

Viscomi & Lyons, attorneys for appellants
(Sarabraj S. Thapar, on the brief).

Respondent has not filed a brief.

PER CURIAM

    Defendants, Joyce Campisi and Liberty Mutual Mid-Atlantic

Insurance Company, appeal from a $600 Special Civil Part judgment

for plaintiff, Joseph S. D'Elia.[1]   Following a bench trial, the court found defendant liable for damage to the townhouse unit plaintiff owned, which was immediately below defendant's residence.  The damage to plaintiff's townhouse was caused by water that leaked from a hose attached to a washing machine in the townhouse where defendant lived.  We affirm the judgment.

Plaintiff filed a Special Civil Part complaint seeking to recover $1075 from defendant.  According to the trial record, defendant resided in a townhouse unit directly above plaintiff.  On January 11, 2017, as defendant was leaving her unit, she heard the fire alarm coming from plaintiff's garage.  She notified a board member of the townhouse association.  Maintenance workers responded to plaintiff's unit and discovered water damage in the corner of his garage.

Plaintiff leased the unit he owned — one of five in the building — to a tenant.  On the morning the leak was discovered, personnel from the building's management company called and informed him that smoke alarms were going off in his unit.  Plaintiff was able to call his tenant, who went to the townhouse and observed the damage.

_____

[1]  Because Liberty Mutual was not involved in the events underlying plaintiff's cause of action, we refer to Ms. Campisi as defendant.

Plaintiff drove to the unit a few days later to assess the damage. He testified the leaks had occurred over a matter of weeks. When asked for the basis of that opinion, he responded he observed the area where leaks had "[gone] down the walls." Based on the number of leaks, the size of the hole in the ceiling, and the extent of the damage, plaintiff opined the leaking had been "transpiring over a matter of weeks." Plaintiff photographed the damage and presented the picture during his testimony.

Michael Wynn, the tenant in the damaged unit and a contractor by trade, prepared an estimate to repair the damage, which totaled $725. Plaintiff paid Mr. Wynn $350 to begin repairs, which were completed by Mr. Wynn's son.

Defendant testified that during the five years she had resided in the townhouse unit she had never had any issues with water leaking in general, or from her washer and dryer specifically. In fact, she had received no complaints from any other tenant concerning her unit. On the day the leak occurred, she left her unit to walk to her car. As she walked past plaintiff's garage, she heard a fire alarm. She reported it to a board member. Later, when she returned after picking up her son, plaintiff's garage door was open and people were inside.

A-4426-16T3

Inside the garage, near a corner, maintenance men from the building's association had discovered water damage and were attempting to determine the source of the water leak. They were tearing down sheetrock. They asked if they could look in her unit. She obliged. They pulled out the washer-dryer unit and discovered the rear washer hoses were leaking. Defendant said "there was water all over and that's what happened, the water was coming from the back of the washer, going down into . . . the sheetrock."

The water was shut off from its source, and defendant purchased replacement hoses. She paid for the repairs to the washer.

The parties disputed the cost to repair the damage to plaintiff's unit. However, the trial court's decision as to damages is not at issue on this appeal.

At the conclusion of the bench trial, the court delivered its decision from the bench and awarded $600 to plaintiff plus fees and costs. Defendant appealed.

After defendant filed a notice of appeal, the trial court issued a June 23, 2017 written amplification of reasons. The court explained:

> Negligence may be defined as a failure to exercise, in the given circumstances, that degree of care, precaution, and vigilance for

the safety of others . . . . It may be . . . the failure to do that which the ordinary prudent person would have done, under the circumstances then existing.

. . . .

Although not articulated well on the record, the [c]ourt found [d]efendant failed to exercise a reasonable degree of vigilance, maintenance, precaution, and care. She testified that it required two weeks for the plywood to dry, and "water was all over" when the washing machine was moved. Water was also on the sheet rock and the floor. Clearly, this leak occurred over a considerable amount of time. Plaintiff saw prior water stains where the ceiling was collapsed. Defendant has the responsibility to be vigilant and to maintain her appliances particularly when living above another residence. . . .

. . . The [c]ourt found [defendant] never denied liability in any of her testimony. She only responded to the leading questions of her attorney regarding prior knowledge of trouble with the water or any notice of her washer leaking. Self-serving testimony that one is not aware of prior washer leaks or prior machine trouble does not relieve the [d]efendant from her responsibility of due care and maintenance . . . . Defendant's testimony reflects that she only contested the cost for repair of the damages. . . . The [c]ourt partially agreed with her and found damages of $600.00 plus costs as reasonable.

On appeal, defendant argues she did not breach a duty of care. She also argues plaintiff produced no evidence to establish she was negligent.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review . . . ." Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." In re State for Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016) (quoting Rova Farms Resort, Inc. v. Inv's Ins. Co. of Am., 65 N.J. 474, 484 (1974)). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). In contrast, a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Twp. Comm., 140 N.J. 366, 378 (1995) (citation omitted).

Here, defendant cites Siddons v. Cook, 382 N.J. Super. 1 (App. Div. 2005), for the proposition that she breached no legal duty to plaintiff. We disagree.

In Siddons, a defendant's dishwasher hose broke, causing damage to a unit below. We held under the facts presented there, "no jury could reasonably conclude that [defendants] were

negligent for failure to inspect and/or maintain the dishwasher." <u>Id.</u> at 14.

Siddons is distinguishable from this case. First, <u>Siddons</u> was decided on a summary judgment motion, and defendant presented the certification of a plumber. He averred that the washer's plastic feed line, which split, was not visible because it was located underneath the dishwasher. The plumber also certified that the visible portion of the hose was undamaged. <u>Ibid</u>. In contrast, defendant in this case presented no testimony from the maintenance men who discovered and repaired the hose. The trial court was not obligated to accept defendant's uncorroborated testimony as undisputed.

Moreover, unlike the plaintiff in <u>Siddons</u>, this plaintiff presented evidence concerning the length of time the leaks existed. Plaintiff testified about numerous water streaks on the sheetrock below defendant's apartment, as well as damage from which the court could have inferred the leaks had occurred over a significant span of time. No similar evidence was adduced in <u>Siddons</u>. That is not to say the trial court here was obligated to accept plaintiff's testimony, but the court's decision as to whose testimony to accept or reject fell entirely within the court's fact-finding function. We are not convinced the trial court's findings were so manifestly unsupported by or inconsistent with

the competent, relevant and reasonably credible evidence as to offend the interests of justice. <u>Rova Farms Resort, Inc.</u>, 65 N.J. at 484. For that reason, we will not disturb the court's determinations.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4426-16T3