**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1574-16T2

SHERRY TAMASCO,

    Plaintiff-Appellant,

v.

HELEN K. RODD and DANIEL RODD,

    Defendants,

and

RE/MAX PARTNERS OUR TOWN, KAREN
MARIANO, NICHOLAS MARIANO and CATHERINE
M. RICKARDS,

    Defendants/Third-Party
    Plaintiffs-Respondents,

v.

DUNCAN ROOKS and LEON ROOKS,

    Third-Party Defendants-
    Respondents.

_____

Argued March 14, 2018 — Decided August 27, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-2492-15.

Adam L. Rothenberg argued the cause for appellant (Levinson Axelrod, PA, attorneys; Adam L. Rothenberg, on the brief).

Anthony P. Pasquarelli argued the cause for respondents ReMax Partners, Karen Mariano, Nicholas Mariano and Catherine M. Rickards (Sweet Pasquarelli, PC, attorneys; Anthony P. Pasquarelli, of counsel; Kenneth C. Ho, on the brief).

Kirsch, Gelband & Stone, PA, attorneys for amicus curiae New Jersey Association for Justice (Gregg Alan Stone and Ronald J. Morgan, on the brief).

PER CURIAM

Plaintiff Sherry Tamasco is a licensed real estate broker who represented the buyer of a one-family house that was listed for sale by defendant ReMax Partners Real Estate, LLC (ReMax), on behalf of the owner. At all times relevant to this case, the one-family house was unoccupied. The owner, defendant Helen K. Rodd, does not live in New Jersey. Defendant Catherine Rickards is associated with ReMax and was the listing broker for the property. The buyer and seller agreed upon a price and signed the sales contract on January 9, 2014, contingent upon the buyer obtaining a purchase-money loan secured by a mortgage on the property.

Plaintiff decided to accompany the lender's real estate appraiser to the property, presumably to ensure the appraiser had

access to the site.[1]  An hour before going to the house, plaintiff called Rickards and told her that she would be going to the property with the appraiser.  Rickards did not inform the property owner, or the owner's son who resided in this State, that these two people were going to the house.  The property was covered with snow and ice when plaintiff and the appraiser arrived.  Plaintiff especially noticed that the steps leading to the entrance door of the house were covered in snow and ice.  She held on to the railing and she walked into the house accompanied by the appraiser.  The appraiser completed her task and left the house, leaving plaintiff behind.  As she walked down the steps, plaintiff slipped and fell, seriously injuring her back.

Plaintiff filed a civil action against the property owner, ReMax, and Rickards, seeking compensatory damages.  Plaintiff settled her claims against the property owner.  Plaintiff continued to press her claims against Rickards, arguing she had an independent duty to keep the property clear of snow and ice under the Supreme Court's holding in <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426 (1993).  The Law Division Judge disagreed and granted Rickards's motion for summary judgment and dismissed plaintiff's complaint with prejudice.

---

[1]  Plaintiff had access to the lockbox that contained the key to the house.

In this appeal, plaintiff argues the motion judge erred in failing to apply the public policy considerations in Hopkins to the facts of this case. Plaintiff argues that the Court's reasoning in Hopkins supports imposing a duty upon a real estate broker who represents the seller to keep the property free of snow and ice. Plaintiff cites a number of decisions that show the factors considered by the Court in Hopkins "were not limited to the factual context of an injury to a customer at an open house event." According to plaintiff, Rickards could have prevented this foreseeable risk because: (1) she knew plaintiff would be at the property; and (2) she had access to the property to remedy the situation.

Defendant argues the judge properly construed that the holding in Hopkins imposed a narrowly tailored duty on a real estate broker who invites the public to come to an open-house "for purposes of its sale to customers, and to give adequate warnings with respect to hazards readily discoverable through such an inspection[.]" Hopkins, 132 N.J. at 446. Defendant emphasizes that, unlike the plaintiff in Hopkins, here plaintiff was fully aware of the icy condition of the steps before she decided to go forward. Defendant urges this court to reject imposing liability on real estate brokers under these circumstances.

Amicus curiae, New Jersey Association for Justice, argues that a proper application of the Hopkins factors shows the Law Division Judge erred when he granted defendant's motion for summary judgment. Similar to plaintiff, amicus points out that a number of cases decided since Hopkins show the Court did not intend to restrict the analysis to cases involving open house scenarios. Amicus contends the motion judge's excessively narrow construction of the Court's reasoning in Hopkins led to the erroneous conclusion that defendant did not owe a duty of care to plaintiff.

We agree with defendant's argument and affirm. The motion judge properly construed and applied the Court's holding in Hopkins to find that a real estate broker does not have a duty to take affirmative action to ensure the property of the client-owner is clear from ice and snow.

I

On January 9, 2014, Jeffrey Jansen entered into a contract to purchase a one-family house owned by Helen K. Rodd, located in the Borough of Metuchen. Plaintiff is the real estate broker who represented Jansen in the negotiations with the seller's broker to facilitate the purchase of the house. ReMax was Rodd's real estate broker. Defendant Rickards is a licensed real estate agent employed by ReMax. Rodd lived in Virginia at the time. The house was therefore vacant while it was on the market. The house was

nevertheless accessible at all times to the listing agents; the key was kept inside a lockbox that could be opened by entering a code.

At approximately two o'clock in the afternoon of February 12, 2014, plaintiff advised Rickards that she was going to the property to allow the appraiser retained by the buyer's mortgage lender to enter the house. Plaintiff had access to the house because she knew the code to open the lockbox. Rickards did not inform the owner that plaintiff was visiting the property with an appraiser; she also did not go to the property to confirm plaintiff's entry. We cannot determine from this record whether Rickards was aware of the icy condition of the steps. It is undisputed, however, that she did not take any action to remedy the condition of the property that day, or at any other time. According to Rickards, the owner and her son were responsible for the daily maintenance of the property, including snow removal.

The walkway from the driveway to the steps were covered in snow and ice; the steps were also covered in snow and ice. Both plaintiff and the appraiser saw these conditions and noted that they "had to be careful." Plaintiff did not contact anyone at ReMax to notify them of the property's perilous icy conditions. She held on to the railing to climb the stairs that led up to the house and noted that the steps were icy. The appraiser left the

house before plaintiff. Plaintiff was thus alone when she walked down the steps on her way out of the house. The accident happened when she slipped descending the steps. She injured her lower back and had to undergo fusion surgery in the lumbar region of her spinal column. Rickards testified in her deposition that plaintiff called her after the accident and told her "she fell on the front porch." Rickards testified she then told the owner, who in turn told Rickards that her son "Leon [would] take care of it."

In response to plaintiff's interrogatories, the owners of the property stated that their "older son was to check on the premises <u>after each of his work days</u>. No legal documents or written agreements exist for this." (Emphasis added). In the course of plaintiff's deposition, counsel for ReMax read into the record the following statement plaintiff gave in response to an interrogatory:

> Following the accident[,] I spoke to the Rodds
> [the owners of the property] during the walk-
> through prior to closing. They inquired about
> the accident. I indicated that I had fallen
> and was in pain and still treating. The Rodds
> had indicated they were in Virginia at the
> time of the accident. They indicated that the
> agent was supposed to take care of the
> property as they understood it.

Following up on this statement, counsel for ReMax asked plaintiff:

A-1574-16T2

Q. Did they tell you which agent was supposed to take care of the property[?]

A. They made it seem like their listing agent. There was no other agent.

Q. Did they tell you that the agent was supposed to clear ice and snow from the property?

. . . .

A. They weren't that specific. They just said take care of.

Q. Let me ask the question this way: Other than Mrs. Rodd saying that the agent was supposed to take care of the property as they understood it, did they say anything else about what the responsibilities of the agent were?

A. I don't recall.

II

We review the grant of a motion for summary judgment in accordance with the same standard used by the motion judge. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). If there are no genuine issues of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). Our review is de novo, without affording any deference to the motion judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

In this appeal, we must determine whether a seller's real estate broker owes a duty to protect a buyer's broker against dangerous conditions on the property during a visit to the property to advance the buyer's interest. Both parties rely on the Court's decision in Hopkins to support their legal arguments. We thus begin our analysis by examining how the Court framed the issue:

> This appeal requires the Court to determine whether a [real estate] broker who holds an "open house" for the purpose of attracting potential buyers has a duty of care with respect to their safety, including a duty to warn of dangerous conditions in the home. The case arose when such a visitor, a relative of prospective purchasers, fell down during an open-house tour sponsored by the broker. The fall occurred when she proceeded down from one level of the house to another and missed a step, which she claimed constituted a dangerous condition because the connecting step was camouflaged by the similar floor that covered both levels.
>
> [Hopkins, 132 N.J. at 431-432.]

The Hopkins Court recognized that the answer to this narrow question implicated the broader issue of "whether a broker's duty of care in these circumstances is to be determined by the traditional common-law doctrine that defines the duty of care imposed on owners and possessors of land or, instead, by more general principles that govern tort liability." Id. at 432. The plaintiff filed a civil action against the broker arguing that it had a duty to warn "of any known risks inside the house or any

risks that a reasonable inspection of the house would have revealed." Id. at 432-33.

The Court first described the traditional common law duty of reasonable care an owner or occupier of real property has to business invitees, to guard and protect them against any known or reasonably discoverable dangerous condition on the property. Id. at 434. Justice Handler ultimately rejected applying this approach to real estate brokers, recognizing that the inquiry should be "whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just." Id. at 438.

Writing for the majority of the Court in Hopkins, Justice Handler crafted a fact-specific analytical paradigm that requires balancing the following four factors: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. Id. at 439. Applying this approach to the facts in Hopkins, the Court held that "a real estate broker has a duty to ensure through reasonable inspection and warning the safety of prospective buyers and visitors who tour an open house." Hopkins, 132 N.J. at 448. This duty only arises in connection

with an open house tour and when "such an inspection is a part of the professional services that would be undertaken by a reasonable broker in attempting to sell the house on behalf of its owner and when the broker has had an adequate opportunity to have undertaken that inspection." Ibid.

The Court found that the nature of the relationship between a broker and a potential buyer in an open house setting is substantial because the prospective buyer-visitor is the invitee of both the owner of the property "through the broker as the owner's agent, . . . [and] the invitee of the broker as well because the broker's own economic interests are served by the invitation." Id. at 442. The "very tangible economic benefits" the broker derives from this invitation implicitly creates a commensurate degree of responsibility for the customer's safety. Id. at 441.

Thus, under these circumstances, "a broker is under a duty to conduct a reasonable broker's inspection when such an inspection would comport with the customary standards governing the responsibilities and functions of real-estate brokers with respect to open-house tours." Id. at 444. The Court also expressly limited the scope of the broker's legal responsibilities by noting it does not include a duty "to warn against any dangers that are

A-1574-16T2

not otherwise known to the broker or would not be revealed during the course of such a reasonable broker's inspection." Id. at 445.

The Court concluded its analysis by addressing the public policy implications of its decision. Id. at 446-49. The Court did not consider the imposition of this duty to be "an unreasonable economic strain on a broker's livelihood" because the broker derives economic benefits from an open house and may share any increased costs with the owner. Id. at 446-47. The Court also viewed the broker to be "in a better position than the homeowner to prevent injury during the course of an open house." Id. at 447-48. Lastly, the imposition of this limited duty of care on a real estate broker serves the public interest by creating an incentive to take proactive measures and thereby "minimize risks of harm" and ensures "that the application of negligence doctrine does not unnecessarily or arbitrarily foreclose redress based on formalisms or technicalities." Id. at 448.

Plaintiff argues ReMax and the listing broker owed her a duty to protect her from the risk of harm created by the ice and snow on the property because her activities benefited them economically. This argument is unpersuasive. Plaintiff's presence on the property that day was not in response to an invitation by ReMAx. Plaintiff was promoting her own financial

interest by facilitating the approval of her client's mortgage application.

Plaintiff also argues that ReMax's relationship to the seller implicitly included a duty to ensure that access to the property was free of dangerous conditions like snow and ice on the entrance way. We disagree. Remax's relationship to the seller was defined by the terms of the listing agreement. ReMax did not agree to provide snow removal services. In fact, in responding to plaintiff's interrogatories, the seller conceded that she relied on her son "to check on the property after each of his work days." Plaintiff's attempt to characterize this acknowledgment of responsibility by the seller as inadmissible hearsay is unavailing. This is indisputably competent evidence as an admission by a party opponent or as an admission against interest. See State v. Branch, 182 N.J. 338, 358 n.7 (2005) (first citing Reisman v. Great Am. Recreation, Inc., 266 N.J. Super. 87, 97-99 (App. Div. 1993); then citing N.J.R.E. 803(b)(4) and N.J.R.E. 803(c)(25)).

Plaintiff also argues that the second and third factors, the nature of the attendant risk and the opportunity and ability to exercise care, weigh in her favor. There is no factual or legal support for imposing liability on ReMax. The risk associated with ascending an ice-covered staircase was readably discernible to

plaintiff when she decided to accompany the appraiser to the property. There is no legal or public policy basis to impose the property owner's common law burden to prevent this harm on ReMax. See Davis v. Devereux Found., 209 N.J. 269, 296-97 (2012). Indeed, as an intermediate appellate court, it is not our role to extend the carefully tailored duty the Court imposed on real estate brokers in Hopkins beyond the open house scenario. See Reyes v. Egner, 404 N.J. Super. 433, 464 (App. Div. 2009); Rogers v. Bree, 329 N.J. Super. 197, 201-03 (App. Div. 2000).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION