812 A.2d 423 (2002)
356 N.J. Super. 322
Paul J. TIGHE and Renee Tighe, h/w Plaintiffs-Appellants,
v.
Deborah A. PETERSON and Theodore Peterson, h/w, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 2001.
Decided January 10, 2002.
*424 Louis Cappelli, Jr., Collingswood, argued the cause for appellants.
William L. Lundgren, III, Cherry Hill, argued the cause for respondents (Green, Lundgren & Ryan, attorneys; Mr. Lundgren, on the brief).
Before Judges KING, CUFF and WECKER.
KING, P.J.A.D.
Plaintiffs appeal from the grant of summary judgment in favor of defendants. On August 16, 1996 at 3 p.m. plaintiff Paul Tighe was injured from a dive into the in-ground pool at the home owned by defendants in Sicklerville, Camden County. Plaintiff was a social guest of defendants. We find no violation of any duty by defendants to the social-guest plaintiff and affirm.

I
Defendants Deborah and Theodore Peterson reside at 107 Country Lane in Sicklerville, Camden County. Defendant Deborah Peterson is the sister-in-law of plaintiff Paul Tighe. About eight years before the August 1996 accident defendant Theodore Peterson purchased an in-ground pool kit. The kit consisted of a liner, a filter, the coping and the steps. Theodore had worked in construction for twenty-three years. He followed the instructions and installed the in-ground pool himself. He stated in his deposition that he dug a hole, laid the block wall, grouted the bottom, installed the liner and the coping, and poured the sidewalk.
The Petersons' pool is rectangular, 16 feet by 32 feet, with a depth of three feet in the shallow end sloping to a depth of seven and one-half feet in the deep end. A diving board stood at the deep end and walk-in steps at the shallow end. The point of the first slope change from the three-foot depth of the shallow end occurred about eight-and-one-half feet from the shallow end wall of the pool. In his deposition, Theodore Peterson stated he did not install depth markers, a rope to separate the deep and shallow ends, or any other markers to indicate the depth of the pool. None came in the kit he bought. He could never identify the manufacturer or vendor of the pool kit. Thus, plaintiff never sued them.
On August 16, 1996 the Petersons invited plaintiff Paul Tighe, age 29, to swim in their pool. Prior to that date, Tighe had visited his sister-in-law, defendant Deborah Peterson, many times since the pool was installed and had used the pool "possibly over twenty times." Paul Tighe stated in his deposition that he knew which end of the pool was the deep end and which end was the shallow end. When asked if he knew not to dive into the shallow end of a pool at the time of the accident, he stated "[w]ell, I know it's not right to dive into the shallow end of a pool, I mean it was common sense."
Paul Tighe's injury occurred when he thought that he dove from the left side of the pool in the direction of the deep end. He stated he believed he was diving towards the deep end of the pool; however, he misjudged the depth "where the slope began" and struck his head on the bottom of the pool causing an injury to his neck. *425 Deborah Peterson was standing or floating in the deep end when Paul Tighe dove in; he intended "just to horse around or maybe tackle my sister-in-law or grab her by the leg. I'm [sic] something like that," according to his deposition.
The plaintiffs' expert, George P. Widas, is a professional engineer and safety professional. Widas' report stated there were no visible signs on the pool indicating the depth of the water, no signs warning of unsafe and dangerous conditions for diving, and no rope or float assembly at the point of the first slope from the three-foot depth in the shallow end. Widas concluded that "[t]he failure of the defendant to properly and adequately inspect for safety and/or maintain the subject residential in-ground swimming pool free of hazardous, unsafe and dangerous conditions violated accepted safe practices and violated the cited references, standards and codes." Plaintiffs assert that this expert opinion created a jury issue on defendants' liability.

II
The duty which hosts owe to their social guests with respect to the conditions of their property is limited. A host has a duty to warn only when dangerous conditions exist on the property of which the host has actual knowledge and of which the guest is unaware. Endre v. Arnold, 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997); see Berger v. Shapiro, 30 N.J. 89, 98, 152 A.2d 20 (1959). Hosts are not required to improve or alter their home in order to render it safer for a guest than for themselves. Endre, 300 N.J.Super. at 142, 692 A.2d 97. "Where a `guest is aware of the dangerous condition or by a reasonable use of his facilities would observe it, the host is not liable.'" Ibid. We recently described the duty in detail in this manner:
The law is well settled regarding the duty a host owes to a social guest as to conditions of the property. The duty is limited. A host need only warn "of dangerous conditions of which [the host] had actual knowledge and of which the guest is unaware." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434, 625 A.2d 1110 (1993); see also Berger v. Shapiro, 30 N.J. 89 97-98, 152 A.2d 20 (1959). A "host need not undertake to make improvements or alterations to render his home safer for those accepting his hospitality than for himself." Berger, supra, 30 N.J. at 97, 152 A.2d 20. The host is under no duty to inspect his or her premises to discover defects which otherwise might not be known to the casual observer. Id. at 98, 152 A.2d 20. Where a "guest is aware of the dangerous condition or by a reasonable use of his facilities would observe it, the host is not liable." Id. at 99, 152 A.2d 20.
[Endre v. Arnold, 300 N.J.Super. 136, 692 A.2d 97 (App.Div.1997).]
The Restatement of Torts, 2d rule adopted in this State in Berger v. Shapiro, 30 N.J. at 89, 152 A.2d 20, states:
§ 342. Dangerous Conditions known to Possessor
A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and *426 (c) the licensees do not know or have reason to know of the condition and the risk involved.
[Restatement of the Law Torts, 2d.]
The case-law authority the plaintiffs rely upon is not persuasive to this situation. Vallillo v. Muskin Corp., 218 N.J.Super. 472, 528 A.2d 53 (App.Div.1987), addressed quite a different situation and presented disputed issues for jury determination on the host's conduct. In Vallillo the defendant-property owner purchased and installed a shallow, above-ground pool. After the pool was installed, the defendant constructed a deck around eight feet of the circular pool. The wall of the pool contained a single warning which read "DANGERDO NOT DIVE." However, upon the construction of the deck by the owner, the sign was completely covered. Id. at 474, 528 A.2d 53. The defendant admitted in his deposition that he constructed the deck so that swimmers could jump or dive into the pool. The defendant also testified that he knew it was dangerous to dive into an above-ground pool, four-feet deep, but he encouraged the practice. Ibid. We reversed the trial judge's grant of the defendant's motion for summary judgment stating "[a] jury could ... find that defendant's construction of the deck increased the likelihood that diving would occur and that defendants not only failed to make known the prohibition against diving, but that [defendant] himself dove into the pool and permitted all of his guests including the plaintiff to dive." Id. at 476, 528 A.2d 53.[1] The landowner's responsibility was enhanced beyond the duty articulated in § 342 because his conduct encouraged a dangerous use of the pool.
In the present case, plaintiff Paul Tighe testified that he had been swimming in the defendants' pool about twenty times. He stated in his deposition that he was aware which end of the pool was the deep end and which end was the shallow end. He also said he was aware it was dangerous to dive into the shallow end of the pool. Plaintiffs contend that the defendants had a duty to warn their guests of the dangers of diving into the shallow end of the pool by posting warning signs, marking the depth of the water, or placing a rope across the pool at the end of the shallow end. Defendants had no duty to make their pool safer for their social guest than for themselves. By his own admission, plaintiff was very familiar with his sister-in-law's pool at the time of the accident. The defendants had no further duty in this circumstance with respect to the known *427 and obvious condition of their property under the common law as explicated by § 342 of the Restatement of Torts, 2d. We find no disputed issue of material fact in this matter. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The condition of the property allegedly causing the injury was familiar and well known to the plaintiff. This is not a case where plaintiff was unaware of an obscure peril.
Affirmed.
WECKER, J.A.D., dissenting.
I respectfully disagree with my colleagues' conclusion that the result here is compelled by section 342 of the Restatement of Torts, 2d; or that defendants Deborah A. Peterson and Theodore Peterson are not liable for injuries to plaintiff Paul J. Tighe[1] because they owed no duty "to make improvements or alterations to render [their] home safer for those accepting [their] hospitality than for [themselves]" and because Tighe was "aware of the dangerous condition or by a reasonable use of his facilities would observe it," quoting Endre v. Arnold, 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997) (quoting Berger v. Shapiro, 30 N.J. 89, 97, 152 A.2d 20 (1959)).
Tighe's claim is not that the Petersons failed to warn that diving in the shallow end is dangerous. That is an obvious fact that plaintiff admitted he well knew. Here the dangerous condition alleged is the absence of any marker to show where the shallow (three foot) end of the swimming pool ends, and the gradual incline toward the deep end of the pool begins. I would hold that defendants owed a duty to take reasonable steps to insure that guests in their pool knew where the incline began, and that a jury could find that (1) by failing to mark the point where the incline began, defendants breached that duty and (2) the absence of any such marking was a substantial factor in causing plaintiff to misjudge the point from which to begin his dive toward the deep end.
The potential for a finding of negligence lies in defendants' failure to provide information that would allow a guest to exercise reasonable care for his own safety. A jury could find that the location of the beginning of the incline, and the graduated depths, was information best known to defendants, especially since Theodore Peterson himself built the pool. A jury could also find Tighe's familiarity with the pool was not so great that he necessarily would have known where the incline began, or the degree of slope.
The motion judge correctly assumed, for purposes of deciding defendant's summary judgment motion,
that a rational jury could find negligence on the part of the defendant because of its failure to have this rope at a certain portion of the slope in the pool that theI think it's the ANSI standards call for. Even though violation of that standard is not negligence per se, it's only evidence of negligence, but assuming all of that, it seems to me that the real issue in this case is whether or not any negligence in terms of the social host or in terms of the installation on the part of the defendant was the proximate cause of this accident.
But the judge erred, in my view, in concluding that under
the Brill[2] standard ... no rational fact finder could conclude that under *428 either theory of negligence advanced by the plaintiff in this matter [as the pool's installer or plaintiff's social host] that either one of those theories was the proximate cause of the happening of this accident.
I also find Vallillo v. Muskin Corp., 218 N.J.Super. 472, 528 A.2d 53 (App.Div.), certif. denied, 109 N.J. 496, 537 A.2d 1287 (1987), relevant to this case. In Vallillo, where we reversed summary judgment dismissing plaintiff's complaint, the defendant property owner had constructed the deck around an above-ground pool in such a way as to obscure the warning signs against diving. Here, the defendants constructed the pool without depth markings, creating the condition involved in plaintiff's injury. I would allow a jury to determine whether defendants failed to exercise reasonable care when they built a pool without any depth or slope markers, and if so, whether that condition was a proximate cause of plaintiff's injury.
Our Supreme Court has recognized that the scope and contours of a party's duty to another are best determined not by a rigid classification of the parties' relationship to one anotherinvitee, social guest, or trespasserbut by all of the circumstances that surround their interaction. Hopkins v. Fox and Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). See also J.S. and M.S. v. R.T.H., 155 N.J. 330, 337-40, 714 A.2d 924 (1998).
As we have previously said, "In New Jersey, it is now well-settled that there is no bright line rule that determines when one owes a legal duty to prevent a risk of harm to another. `Duty' is a fluid concept." Wlasiuk v. McElwee, 334 N.J.Super. 661, 666, 760 A.2d 829 (App.Div.2000) (driver liable to passenger injured by criminal act of stranger whom driver allowed into car, because risk of harm from giving rides to strangers is reasonably foreseeable) (citing Hopkins, 132 N.J. at 439, 625 A.2d 1110).
The Court in Hopkins recognized the long-standing rule that "the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware." 132 N.J. at 434, 625 A.2d 1110. That is the rule of Restatement § 342. Even under that traditional analysis, I would hold that by constructing as well as owning this pool, the Petersons may have had more specific actual knowledge of the slope and graduated depth of the pool than was apparent to a guest such as plaintiff, and therefore an obligation to make that information apparent.
But the Court chose in Hopkins not to restrict its analysis to "[t]he traditional consumer law doctrine governing premises liability," id. at 435, 625 A.2d 1110, holding that whether a duty of care exists
turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. Goldberg [v. Housing Auth., 38 N.J. 578, 583, 186 A.2d 291 (1962)]. That inquiry involves identifying, weighing, and balancing several factors___ the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. Ibid. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
[132 N.J. at 434, 625 A.2d 1110.]
The key to the legal determination that a duty exists, and the scope of that duty, is in the foreseeability of the risk, the seriousness of the risk, and the "practicality of preventing it." J.S. & M.S., 155 N.J. at *429 339, 714 A.2d 924. Where the harm at risk is serious, and the means of avoiding it relatively simple, "it is fair to impose a duty." Id. at 340, 714 A.2d 924. The risk of serious harm from diving into water that is too shallow is well known, and painting depth markings on the side of a pool requires minimal effort or expense. Under the circumstances, I would find that such a duty, or a reasonable substitute, exists.
I do not suggest that if a jury finds that defendants were negligent in their failure to mark the beginning of the incline, or the gradually increasing depths, that it cannot find nevertheless that plaintiff's own failure to exercise due care bars his recovery.
I simply find that the homeowners have a duty to see that persons using the pool at their invitation have sufficient notice of its depth and slope to make an informed judgment before diving in, and a jury rather than a judge should determine whether that duty was breached and whether any such breach was a proximate cause of plaintiff's injury.
I would therefore reverse and remand for trial.
NOTES
[1] Our description of the facts in Vallillo clearly reveals the difference in the two situations:

The wall of the pool contained the words "DANGERDO NOT DIVE" in only one location. Edward personally constructed a deck around approximately eight feet of the circular above-ground pool thereby covering the one sign which related to the danger of diving. Defendant, Edward Vallillo, admitted in his deposition that his intended use of the deck was to jump in the pool, which to him included diving.
The warranty from S.K. which accompanied the plastic replacement liner stated:
IMPORTANT ... FOR YOUR HEALTH & SAFETY ... PLEASE NOTE ... this swimming pool does not have sufficient depth for diving. do not dive. do not allow others to dive into this swimming pool. diving is dangerous. [(emphasis added)].
Edward testified that he never read the warranty or the warnings from S.K. and that he did not instruct anyone not to dive or how they were to use the pool. He acknowledged that he knew you were not supposed to dive into a pool such as this. Plaintiff testified that Edward himself was the first to dive into the pool and that everyone was diving, jumping and horsing around at a party where the Vallillos served beer and invited the guests to bring their own bottle.
[Id. at 474, 528 A.2d 53.]
[1] Plaintiff Renee Tighe's claim is derivative, and I therefore refer only to plaintiff Paul J. Tighe as "Tighe" or as "plaintiff."
[2] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).