**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0783-23

CESAR CARIT RUIZ,

     Plaintiff-Appellant,

v.

WILLIAM T. BOURKE and
KATHLEEN BOURKE,

     Defendants-Respondents,

and

ALEJANDRO HOME
IMPROVEMENTS, LLC, and
AROMANDO CONSTRUCTION
COMPANY,

     Defendants.

_____

Submitted December 17, 2024 – Decided March 31, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8212-20.

Ginarte Gonzalez & Winograd, LLP, attorneys for appellant (Joseph A. Reardon III, on the brief).

Kahana & Feld, LLP, attorneys for respondents (Sofya Uvaydov and Kharis Lund, on the brief).

PER CURIAM

Plaintiff Cesar Carit Ruiz appeals from an order granting summary judgment to defendants William T. and Kathleen Bourke.[1] Because we conclude no genuine issues of material fact exist that defendants breached a duty of care to plaintiff or that they had actual or constructive notice of the alleged dangerous railing, which collapsed and caused plaintiff's injuries, we affirm the trial court's summary judgment order. We further affirm the trial court's order barring plaintiff's expert report as a net opinion.

## I.

Plaintiff was employed as a painter with SAM Painting Inc. In October 2020, plaintiff was painting at a property located on Clayton Avenue in Bay Head. Defendants were the owners of the property. SAM was hired as a subcontractor by codefendant Alejandro Home Improvements, LLC (AHI).

---

[1] Because defendants are married and share the same surname, we reference them by their first names. We intend no disrespect.

Defendants had engaged AHI to paint the exterior of the two-story home located on Barnegat Bay.

At the time of the incident, plaintiff was on the second-floor balcony painting the outside wall of the home using a sixteen-foot extension ladder. At the end of the workday, plaintiff handed the ladder down to a worker at ground level by leaning over and pressing against the balcony railing on one leg. The balcony railing gave way causing him to fall to the ground twelve feet below causing serious injuries.

Defendants purchased the property approximately one year prior to the accident. Before purchasing the property, defendants hired a licensed home inspector John Youmans of Excel Home Inspection to perform a home inspection and prepare a property report. William accompanied Youmans during the inspection. Following the inspection, Youmans prepared a written report with photographs and specific recommendations. William testified at his deposition that he personally read the entire report and had no questions before purchasing the property.

Section 6 of the report, entitled "Stairs and Railing," stated "Safety Concern: Recommend all railing be structural evaluated by a qualified professional for all repairs and replacement needed prior to closing for life safety

3

of occupants.  This is highly recommended."  This bullet point was listed above a single photograph of the property's ground floor deck.

Plaintiff retained liability expert Raymond Nolan, an engineer.  Plaintiff requested Nolan to perform an engineering investigation into the second-floor porch guardrail failure that caused him to fall to the ground.  After obtaining documents from discovery and inspecting the property, Nolan prepared a report.  In the report, Nolan analyzed police body camera footage .  Nolan's report noted that his inspection revealed the end of the porch's guardrail at its top rail.  He opined that the dark appearance of the guardrail indicated the joint between the rail and post was not sealed and atmospheric moisture got into the joint, weakening it.  Nolan also analyzed photos included in defendants' answers to interrogatories.  Nolan opined the darkened holes on the post of the guardrail depicted in the photos "suggest moisture intrusion at the guardrail post joint that failed."  Nolan also reviewed Youmans' report and found "critical observations [were] made over a year prior to the accident that bear upon the issues in this case."  Nolan's report also referenced Youmans' report by stating:

> The home inspector recommended a full review for repair and replacement as necessary by a qualified professional prior to purchase.
>
> e. Stairs and Railing Observations:  The deck, stairway appears functional at the

A-0783-23

time of inspection but, due to its age We make no Warranty, guarantee or estimation as to the remaining life of all decks, stairs and railing . . . Safety Concern: Recommend all railing be structural, [structurally] evaluated by a qualified professional for all repairs and replacement needed prior to closing for the life safety of occupants. This is highly [recommended]. Page 16, Item 6.

Nolan's report ultimately concluded:

. . . Defendants hired a professional home inspector to inspect the house in detail and report findings. The inspection report specifically warned that exterior elements of the house, including railing, was in poor condition and recommended further evaluation by a qualified professional for safety to the occupants before closing. The [d]efendant homeowners failed to follow this recommendation and failed to post warnings regarding the railings.

It is my opinion that, within a reasonable degree of engineering certainty, [d]efendant homeowners failed to follow the recommendations in their home inspector's report. They failed to get recommended further evaluation of the railings and also failed to post or issue warnings. If the homeowners had followed the recommendations of their home inspector, the defective guardrail would have been discovered and repairs or replacement could have been done and there would have been no accidental fall and reported significant personal injury. In addition, if warning signs had been posted on the guardrails plaintiff would have been warned of the dangerous condition and taken steps to avoid the guardrail.

5

After discovery was completed, defendants moved for summary judgment, arguing: (l) there was no evidence that they exercised any control over plaintiff's work; (2) that they did not owe any duty to plaintiff; and (3) that Nolan's report and opinion should be barred as a net opinion.

Plaintiff filed opposition and a cross-motion for summary judgment as to liability only against defendants. Plaintiff argued that Nolan's opinion created material issues of fact regarding defendants' failure to correct and/or warn plaintiff of the dangerous property conditions and failure to take measures to prevent the fall as their home inspection report provided notice of the dangerous condition. Plaintiff also argued his expert opinion should not be barred, as it was adequately supported and would aid a jury's understanding of the facts. Plaintiff argued in the alternative that his cross-motion against defendants for liability only should be granted because the relevant evidence confirmed that they owed a duty to him and had breached that duty causing his injuries.

In their reply, defendants argued: (l) plaintiff was injured in the course of his work when he made unusual/unsafe decisions about how to use the subject railing while handing down a ladder horizontally; (2) there was no legal violation of a defense duty here, since no one can explain exactly what was wrong with the railing or how the alleged "defect" could have been discovered

6

by reasonable inspection; and (3) plaintiff's expert report is a net opinion entirely comprised of conclusions without proper basis and/or scientific rationale.

Following oral argument, the trial court granted defendants' motion for summary judgment and denied plaintiff's cross-motion for summary judgment as to liability only. In its written decision, the court noted summary judgment was appropriate because defendants did not breach any duty owed to plaintiff. The court found there were no issues of material fact to establish defendants failed to exercise their duty of "ordinary care to render the outside of their home reasonably safe for the purpose of painting."

Further, the court opined plaintiff was unable to provide any evidence showing defendants were "actively interfering or participating in any manner whatsoever on how [p]laintiff's work was performed." The court noted defendants only set the boundaries of what they wanted painted at their home. The court relied upon Gibilterra v. Rosemawr Homes, Inc., which held that a landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the work. 19 N.J. 166, 170 (1995). The court highlighted that defendants were not present when plaintiff leaned over the railing and were not suggesting or interfering with how plaintiff performed his work. The trial court thus concluded that plaintiff was unable to establish the

7

existence of negligence because he could not demonstrate how defendants breached any duty of care.

In addition, the court rejected plaintiff's expert's opinion finding it was "a net opinion and does not establish any negligence on the part of [d]efendants," because Nolan failed to provide a factual basis for his conclusions, pursuant to N.J.R.E. 703. The court found the report failed to reference any applicable standard of care regarding the negligence of defendants and did not provide any explanation or evidence of a defect related to the deck railing that caused it to give way. The court stated without any factual detail of the railing's defect, there is no basis for the claim that defendants had an obligation to hire someone to inspect the railings after the purchase of their home.

Lastly, the court found the home inspection report "does not provide any detail that any railings are unsafe or unsound." The court noted the section of the report regarding the railings being unsafe was "referenc[ing] a photograph of the first-floor deck, not the second floor—and even that photograph provides no detail as to a problem with the railing." Thereafter, the court entered an order dismissing the complaint as against defendants with prejudice.

On appeal, plaintiff contends the trial court improperly "toggled between" theories of premises liability and construction liability. Plaintiff asserts he did

not advance a construction liability theory, nor was one supported by the facts. Plaintiff argues if the court had solely rested its decision on a premise liability theory, it is clear defendants failed to discharge their duty of care. Plaintiff argues, as an invitee, a property owner owes him a duty to "use reasonable care to make the premises safe, including a reasonable inspection to discover defective conditions" quoting Daggett v. Di Trani, 194 N.J. Super 185, 192 (App. Div. 1984).

Plaintiff also asserts defendants were placed on actual notice of the dangerous condition of the railing from Youmans' home inspection report provided to them. Plaintiff maintains the report notified defendants as to the dangerous condition of the railings. Further, plaintiff notes there is no question that William read the report in its entirety and had a full understanding of its contents. Plaintiff argues defendants had actual and constructive knowledge of the dangerous railing condition. Plaintiff asserts that the report provided defendants notice of the dangerous condition of the railing which created a "question of fact that prevented summary judgment." Plaintiff further asserts defendants failed to exercise reasonable care to discover, correct or warn of the condition of the railing.

9

Plaintiff also argues Nolan's report was not a net opinion and should have been considered. He notes the report "included the deposition testimony of defendants, the forty-nine-page home inspection report and the video recorded of the accident scene." Plaintiff asserts Nolan offered an "engineering opinion" that Youmans' report, if followed, would have "permitted discovery of the defective guardrail presumably resulting in repair or replacement." Plaintiff also argues it was "plain error" for the trial court not to hold a N.J.R.E. 104 hearing prior to barring Nolan's opinion.

## II.

A trial court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences there from favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On appeal, we employ the same summary judgment standard. Townsend v. Pierre, 221 N.J. 36, 59

10

(2015). If there is no factual dispute, and only a legal issue to resolve, the standard of review is de novo and the trial court rulings "are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We review a trial court's decision regarding the admissibility of expert evidence for an abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008). The abuse of discretion standard applies to evidentiary rulings regarding the evaluation, admission, or exclusion of expert testimony. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010). An abuse of discretion occurs when a trial judge's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005); see also State v. S.N., 231 N.J. 497, 515 (2018).

### III.

Because plaintiff relies on Nolan's expert opinion to support his theory of liability against defendants, we begin with his argument that the court abused its discretion by finding Nolan's report was barred from consideration as a net opinion. The admissibility of expert opinion is guided by N.J.R.E. 702 and 703.

11

N.J.R.E. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

An expert's opinion must be based on "'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.'" Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)). An expert opinion not supported by factual evidence or other data is considered a "net opinion" and is inadmissible. Ibid. To avoid presenting a "net opinion," the expert must "give the why and wherefore of his or her opinion, rather than a mere conclusion." Ibid. (quoting Townsend, 186 N.J. at 494).

As we have explained, "'[e]xpert testimony should not be received if it appears the witness is not in possession of such facts as will enable him [or her] to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture.'" Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 323

(App. Div. 1996) (quoting Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 299 (App. Div. 1990)).

We have stressed that "opinion testimony 'must relate to generally accepted . . . standards, not merely to standards personal to the witness.'" Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999) (quoting Fernandez v. Baruch, 52 N.J. 127, 131 (1968)); see also Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001) (discussing that the court in Taylor was "concerned by 'the total absence in [plaintiff's expert's] testimony of reference to any textbook, treatise, standard, custom or recognized practice, other than his personal view'" (quoting Taylor, 319 N.J. Super. at 182) (alteration in original)).

Here, Nolan provided his opinion on liability in the summary and conclusion section of the report which exclusively relied upon Youmans' report that recommended all railings be evaluated by a qualified professional for repairs before closing on the property. Relying on this recommendation, Nolan opined, "if defendants had followed the recommendation of their home inspector, the defective guardrail would have been discovered and repairs or replacement could have been done and there would have been no accidental fall and reported significant personal injury." He also opined "if warning signs had

been posted on the guardrails the plaintiff would have been warned of the dangerous condition and taken steps to avoid the guardrail."

We emphasize Nolan's opinion was exclusively based on Youmans' home inspection report which recommended an inspection of the railings before closing. Youmans' report did not find any of the railings were in a dangerous condition at the time of the accident. In the body of his report Nolan noted that he observed accident scene photos which showed the subject railing was dark at the end where it connected to the post because it was not sealed properly which allowed the joint to weaken. He also stated other portions of the second-floor deck railing were not properly sealed and in the same dark condition when he made his inspection several months after the accident. Glaringly missing from the opinion is any applicable standard of care, a description of any duty owed by the homeowner or a factual basis that defendants breached any standard of care. Also, Nolan's report did not opine within a reasonable degree of engineering probability that the railings were faulty or dangerous on or about the time of the accident. Nor did he opine that the condition of the railing provided constructive notice of its dangerous condition to defendants or that it was the proximate cause of the accident.

We agree with the trial court that Nolan's conclusions in his report were inadmissible net opinions and the court's failure to consider these conclusions was not an abuse of discretion. We further determine there is no merit in plaintiff's contention that a hearing was required pursuant to N.J.R.E. 104 because plaintiff failed to request a hearing and was satisfied in arguing what was stated in Nolan's report. We conclude a hearing was not needed because the deficiencies in the report itself were readily apparent.

IV.

We now address plaintiff's arguments that (1) defendants had a duty of care to exercise reasonable measures to protect plaintiff from a known dangerous condition; and they had actual notice of the dangerous condition but failed to correct the condition or warn plaintiff and; (2) notwithstanding defendants' actual notice of the dangerous condition, defendants failed to exercise reasonable care to discover, correct, or warn of the condition.

A cause of action for negligence "requires the establishment of four elements: (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). The plaintiff "bears the burden of establishing those elements 'by some competent proof.'" Davis v. Brickman Landscaping

15

Ltd., 219 N.J. 395, 406 (2014) (citing Buckalew v. Grossbard, 87 N.J. 512, 524 (1981), then quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

The duty owed to a plaintiff is determined by the circumstance that brought him to the property in the first place. There is no exact rule that determines when one owes a legal duty to another to prevent harm. "Duty is a fluid concept." Tighe v. Peterson, 356 N.J. Super. 322, 330 (App. Div. 2002), judgment aff'd, 175 N.J. 240 (2002). Whether a defendant owes a legal duty and the scope of that duty are questions of law for the court to decide. Carvalho v. Toll Bros. and Devs., 143 N.J. 565, 572 (1996).

A landowner generally has "a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." Rigatti v. Reddy, 318 N.J. Super. 537, 541 (App. Div. 1999) (quoting Kane v. Hartz Mountain Indus., Inc., 278 N.J. Super. 129, 140 (App. Div. 1994)). Although that duty extends to an independent contractor's employee, "[t]he landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986); see also Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 406-07 (2006) (recognizing "exception to the requirement that premises be

A-0783-23

made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself"); Cassano v. Aschoff, 226 N.J. Super. 110, 115 (App. Div. 1988) (landowner not liable when employee of tree-removal contractor was struck by falling limb).

This exception exists because a "landowner may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety." Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999).

> [T]he general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work, provided that the landowner does not retain control over the means and methods of the execution of the project. Gibilterra, 19 N.J. at 170. In Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 71 (App. Div. 1961), [we] held that '[a]bsent control over the job location or direction of the manner in which the delegated tasks are carried out,' the party contracting out the work, be it a landowner or a general contractor, 'is not liable for injuries to employees of the []contractor resulting from either the condition to the premises or the manner in which the work is performed.' Further, '[t]his immunity [is not] disturbed by the exercise of merely such general superintendence as is necessary to insure that the []contractor performs his agreement . . . .' Ibid. That is so especially when the contractor

is an experienced laborer hired either to correct the very danger present or to perform his tasks amidst the visible hazards. The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform.

[Muhammad v. N.J. Transit, 176 N.J. 185, 198-99 (2003) (quoting Wolczak, 66 N.J. Super. at 71) (citations reformatted).]

When an invitee is injured by a dangerous condition on the homeowner's premises, the owner is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident. Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015). "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "Constructive notice can be

inferred" from eyewitness testimony or from "[t]he characteristics of the dangerous condition," which may indicate how long the condition lasted. Ibid. However, "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

We determine plaintiff's first argument claiming defendants had a duty to protect plaintiff from the dangerous railing and had actual notice of the dangerous condition based on Youmans' inspection report holds no merit. Plaintiff failed to provide any proofs that defendants breached any duty owed to him nor proof that the railing was in a dangerous condition at the time of the accident which created a genuine issue of material fact.

Again, as we touched on in Section III, Nolan's report did not provide a standard of care which created any duty on defendants to follow their home inspector's prophylactic recommendation to inspect all the home's railings prior to closing. Nor did plaintiff provide any proofs that the railings were in a dangerous condition at the time of the accident. Here, we concur with the trial court that plaintiff failed to provide any evidence that defendants breached any

19

duty or failed to exercise ordinary care to render their house and decks reasonably safe for the purpose of painting the structure.

We further conclude the painting of a large two-story home assumed certain hazards created by the job itself including: (1) placing a sixteen-foot ladder on the second story deck; and (2) transporting the ladder to and from the second-floor deck. These actions were part of the contracted work of painting the home. Climbing ladders, using the deck of the existing home to place ladders on and moving the ladder to and from the deck are all part of the work plaintiff's company was contracted to perform and part of the risk reasonably foreseeable to its employees. Plaintiff's decision to place his weight and the ladder's weight onto a second floor guardrail to transport the ladder were actions to carry out the work his company was contracted to perform.

There is also no evidence in the summary judgment record that defendants were present at the time of the accident or that they were directing the work to be performed by plaintiff. Based on these determinations, we conclude defendants did not breach any duty of care owed to plaintiff and the property was in a reasonable condition for purposes of the work plaintiff's company was contracted to perform.

20

Finally, even if we assume defendants owed a duty to plaintiff, we conclude plaintiff failed to show defendants had actual or constructive notice that a dangerous condition existed. The report recommended "all railings be structural[ly] evaluated by a qualified professional for all repairs and replacement needed prior to closing for life safety of occupants." As we previously determined in this opinion, this recommendation in the report did not provide actual notice of a dangerous condition since it did not find the second floor railing nor any railings outside the home were in a poor or dangerous condition. Concerning constructive notice, as the trial court found, both William and plaintiff testified they never noticed anything wrong with the deck rails. Plaintiff testified at his deposition that the railing did not "look old" and he did not notice anything wrong with the railing. Defendant testified at his deposition in a similar manner in concluding he was on the second-floor deck approximately eight to twelve times prior to the accident and never saw anything wrong with the deck railing. Further, Nolan's report provided no opinion related to the outward appearance of the railing on or about the time of the accident which would have provided defendants with constructive notice of a dangerous condition. Without such, plaintiff's argument fails, and summary judgment was appropriately granted.

21

Based on our conclusion that defendants were entitled to summary judgment, plaintiff's final argument that the trial court erred by denying his cross-motion for liability only is moot. We further observe plaintiff never filed a cross-appeal concerning this issue and therefore has waived his argument on appeal. A party may [only] argue points the trial court either rejected or did not address, so long as those arguments are in support of the trial court's order. See Lippman v. Ethicon, Inc., 432 N.J. Super. 378, 381 (App. Div. 2013) ("As respondents, defendants can raise alternative arguments in support of the trial court's judgment without filing a cross-appeal"); Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443 (App. Div. 1984) ("[W]ithout having filed a cross-appeal, a respondent can argue any point on the appeal to sustain the trial court's judgment"). Because plaintiff seeks to reverse the trial court's order denying his cross-motion, he was required to file a cross-appeal.

To the extent we have not addressed any of defendants' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

22

A-0783-23